### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE WESTERN DISTRICT OF PENNSYLVANIA

IN RE:                           )

JOHN A. KARTMAN,          )  Bankruptcy No. 04-27371 TPA
      Debtor              )  Chapter 13
                          )

JOHN A. KARTMAN,          )
      Plaintiff,           )
                          )

        v.                )  Adversary No. 05-2149 TPA
                          )

NORTH SUBURBAN TREE        )
SERVICE INC.,              )
      Defendant,         )

*Appearances:*

    John A. Kartman, Plaintiff:   Mary Bower Sheats, Esq.
    North Suburban Tree Service, Defendant:   Robert J. Williams, Esq.

### ***MEMORANDUM OPINION***

      The matter currently before the Court involves the *Motion to Alter or Amend Judgment Pursuant to Bankruptcy Rules 8002(b) and 7052* filed by the Debtor/Plaintiff, John A. Kartman ("Kartman"). The Motion requests this Court to "alter or amend" its oral findings of fact and conclusions of law set forth on the record following the trial on the Debtor's *Amended Complaint to Avoid Lien Pursuant to 11 U.S.C. § 522(h) and § 544*. The Complaint sought to avoid a judgment lien obtained by default by Defendant North Suburban Tree Service. The Motion contends that the reasons set forth in the Judgment Order entered of record following the trial incorporated factual findings and legal conclusions unsupported by the record. Although review of the record indicates that the Judgment Order and the cases cited therein appear to properly reflect

the Court's oral findings and reasoning in denying Kartman's Complaint, for purposes of clarity in this regard, the Court grants Kartman's Motion and enters the within written Memorandum Order in place of its original, oral findings and conclusions.  For he reasons explained below, the relief requested in Kartman's Complaint is denied.

## PROCEDURAL HISTORY

On December 9, 2002 Defendant North Suburban Tree Service, Inc.  ("NSTS") obtained a judgment against Kartman, his nondebtor wife, Patricia, and an entity known as West Chester Highlands, Inc. in the amount of $28,860.  The judgment was obtained by default in a proceeding filed by NSTS in the Court of Common Pleas of Allegheny County, the state trial court. The complaint was initially brought by NSTS in a *pro se* capacity by the principals of NSTS, Mr. and Mrs. Stephen Blum and their collection agent, Mr. Belch. Counsel for the Kartmans apparently believed that he had obtained an extension of time to respond from NSTS until December 18, 2002. NSTS disputed that any such continuance was granted.

On December 20, 2002, a petition to open the default judgment was submitted to the state trial court.  The petition to open indicated that meritorious defenses would be raised although it did not specify what those defenses might be.  Nor did the petition attach the answer that would be filed should the request to open be granted.  A Rule to Show Cause was issued dated December 23, 2002 by the state trial court which required the taking of depositions and for oral argument to be scheduled upon praecipe following completion of depositions.  No depositions were taken and NSTS requested a hearing date.  A hearing was set for July 15, 2003.

Neither Kartman, his co-defendants nor counsel for the defendants appeared at the scheduled hearing on the petition to open the default judgment. NSTS asserts, and nothing in the record indicates anything to the contrary, that it argued its position regarding the default judgment at the scheduled hearing despite the absence of counsel. NSTS presented to the state trial court the relevant facts in its response to the petition to open, defendants' failure to appear and failure to comply with applicable rules of court. In an order dated July 15, 2003, the state trial court denied the petition to open and allowed the original default judgment to remain of record.

Shortly after entry of the order denying the petition to reopen, Kartman filed his first bankruptcy petition on July 30, 2003. That case was subsequently dismissed on May 20, 2004. While that case was pending, the Debtor brought no action or proceeding concerning the NSTS judgment. Approximately one year later, on June 3, 2004, Kartman filed his present bankruptcy. The underlying complaint was originally filed on January 31, 2005. Pursuant to an order of this Court, upon Motion to Dismiss Complaint filed by NSTS, an amended complaint was filed by Kartman on July 16, 2005.

On June 5, 2006, trial on the matters complained of by Kartman in his Complaint took place before this Court. Upon conclusion of all the testimony and argument of Counsel, this Court denied the relief requested in Kartman's Complaint setting forth its oral findings and conclusions of law on the record. Thereafter, the Court issued its Judgment Order pursuant to *Fed. R. Bankr. P. 7052* incorporating by reference its findings and reasoning but also setting forth specific reference to the controlling legal authorities relied upon by this Court in rendering its decision. Thereafter, the Debtor timely filed his current Motion.

### *FACTUAL BACKGROUND*

West Chester Highlands, Inc. ("West Chester") was a building and development company created by Kartman for the purpose of development in Belle Vernon, PA. Kartman was the sole shareholder and Chief Operating Officer.  NSTS entered into a contract with West Chester in  August 2001 to clear acreage in anticipation of constructing self storage sheds. Ex. 7.  After NSTS completed much of the clearing, it was learned that financing for the project had fallen through.  Kartman testified that he told the principal of NSTS, Stephen Blum, that he intended to meet the obligation to NSTS and that he wanted to personally make sure that NSTS was paid.  The parties met on January 31, 2002 to discuss the pending issues.  Blum similarly testified that Kartman told him at the January 31, 2002 meeting as well as on other occasions, that Kartman would be "personally" liable for the obligation.  A promissory note was subsequently sent by certified mail to Kartman for signature.  The promissory note in the amount of $26,904.47 was drafted with the Borrowers identified as "John A. Kartman" and "_____ Kartman", the blank line being for the first name of Kartman's wife who was also included on the Note.  Clearly, the promissory note was intended to be signed by both the Debtor and his wife.  Ex. 5.  The promissory note was not signed or returned to NSTS.

During the relevant time period NSTS was owned by Stephen Blum who was also its President.   His wife, Kathleen, was also involved in the business as general manager and secretary.

Kathleen Blum also believed the Kartmans had assumed personal liability for the NSTS obligation based upon conversations between Kartman and her husband during which

conversation Kartman requested that NSTS draft a promissory note for joint signature.  Although

the document was prepared, the note was neither signed nor returned.  Kathleen Blum testified that

in an attempt to collect the debt, NSTS enlisted the assistance of James Belsh to collect the debt. It

was Kathleen Blum who, and with the assistance of Mr. Belsh, caused the complaint to be filed

against Kartman, his wife and West Chester.  Kartman's attorney in the state court action testified

that he believed he had an oral agreement with Mr. Belsh regarding an extension of time to answer

the complaint but acknowledged that there was no written agreement in this regard. Subsequently,

he learned from Mr. Belsh that no extension was in fact approved and default judgment was taken.

The state court default judgment was entered against all defendants including Mrs. Kartman, under

the authority and name of Kathleen Blum, a non-attorney "officer" of the corporation.


### *ANALYSIS*


The Amended Complaint seeks to avoid the judgment lien of NSTS on the basis of

11 U.S.C. § 522(h) and 11 U.S.C. § 544.  In conjunction with these bases, Kartman seeks to avoid

the lien on the basis of fraud.  It appears on the face of the complaint that Kartman is asserting

common law fraud.  Counsel for the Debtor also stressed that the Pennsylvania Uniform Fraudulent

Transfer Act, 12 Pa. C.S.A. § 5101, *et. seq.*, is asserted although no such specific assertion or

statutory reference was provided in either the original complaint or the Amended Complaint. The

fraud asserted was that at the time of filing the complaint preceding the default judgment, NSTS

knew that neither Kartman nor his wife was liable for the debt to NSTS.  NSTS asserts that Kartman

is precluded from proceeding on the basis of *res judicata* and collateral estoppel.

*Standing*

Whether a Chapter 13 debtor has the statutory authority to commence an avoidance action is generally the subject of some controversy.  *See e.g., In re Stangel*, 219 F.3d 498 (5th Cir. 2000), *In re Knapper*, 407 F.3d 573 (3d Cir.  2005).   However, where the avoidance action is brought within the context of a debtor's exemption,  pursuant to 11 U.S.C. § 522(h),  there does not appear to be such dispute.  *See e.g., McLean v. City of Philadelphia Water Revenue Bureau*, 891 F.2d 474 (3d Cir. 1989).  11 U.S.C. § 522(h) provides that a debtor may avoid a transfer of property to the extent that the debtor could have exempted the property under 11 U.S.C. § 522(g)(1).   That section, 11 U.S.C. § 522(g)(1), provides that a debtor may exempt under 11 U.S.C. § 522(b) property recovered by the Trustee *to the extent the debtor could have exempted* the property if it had not been transferred *if* the transfer was not voluntary and the debtor did not conceal the property *or* the transfer could have been avoided by the debtor under 11 U.S.C. § 522(f)(2).   However, that is not the end of the inquiry.  Even if the requirements of Section 522(g)(1) are met, Section 522(h) applies only if two additional conditions are met: first, the transfer is avoidable by the trustee under specific avoidance provisions under applicable nonbankruptcy law, and second, the trustee does not attempt to avoid it. Because the avoidance of this transfer would only benefit the Debtor and not the estate, the Trustee would have no interest in attempting to avoid it.  So the Court will assume that the second condition has been met.  Therefore, in order for Kartman to be able to avoid a transfer under Section 522(h),  he must first have property subject to exemption pursuant to Section 522(g).

On April 28, 2005, Kartman amended his exemptions pursuant to 11 U.S.C. § 522(b)(2) from the federal exemptions originally claimed to the exemptions available pursuant to

applicable nonbankruptcy law, i.e., exemptions available under Pennsylvania law. Section 522(b)(2)(B) provides that property that is owned prior to the commencement of the case as tenants by the entireties may be exempt to the extent that such interest is exempt from process under applicable nonbankruptcy law. *Exempt from process* in this provision is understood to mean immune from process or that which creditors cannot reach. *In re Napotnik*, 679 F.2d 316, 319 (3d Cir. 1982).

In Pennsylvania, whether a property is immune from process by a creditor depends on whether that creditor is owed money by one or both spouses. A judgment creditor may execute on entireties property only when both spouses are judgment debtors. *In re Johnston*, 333 B.R. 724 (Bankr. W.D. Pa. 2005) *citing Klebach v. Mellon Bank*, 565 A.2d 448, 450 (1989). Property that is owned as tenants by the entireties is *not* immune from process by a creditor that is owed money by both spouses. *In re Napotnik*, 679 F.2d 316 (3d Cir. 1982); *In re Maloney*, 146 B.R. 168 (Bankr. W.D.Pa. 1992).

In the instant proceeding, Kartman asserts that the judgment held by NSTS is a lien which impairs an exemption on property to which he is entitled pursuant to 11 U.S.C. § 522(b)(2). The property at issue, Kartman's residence, is owned with his wife as tenants by entireties. Document No. 9, Schedule A. Kartman is seeking to exempt the property on the basis of his entireties interest. Document No. 109, Amended Schedule C. The judgment which Kartman asserts is impairing his exemption, is against both Kartman and his wife. Pursuant to Pennsylvania law, the property is not immune from process since the judgment held by NSTS is against both spouses. *See Napotnik, supra*. Consequently, Kartman is not entitled to exempt the portion of the equity in his

residence that is subject to the NSTS judgment.  Kartman could exempt his interest to the extent that

he has equity above the amount of the liens.  11 U.S.C. § 522(d)(1).  However, he has not put forth

anything in the record as to what amount, if any, this might be.  There is no evidentiary support for

such a finding in the pleadings nor in the testimony regarding the value of the property or any liens

of record on the property other than the NSTS judgment.  Based on the present record, Kartman does

not have an interest that he can exempt under Section 522(b).  Therefore, there is no interest that he

can exempt pursuant to Section 522(h).  Accordingly, Kartman does not have standing to bring an

avoidance action.[1]

Even if Kartman had standing to bring an action under Section 522(h) he has not

shown that the NSTS judgment would impair any exemption he may have had.  Kartman did not

meet his burden of proof to show any other bases that would permit the avoidance of this judgment

based on the facts and the present record.  In fact, Kartman offered no proof in regard to these

essential elements.  Similarly, as will be shown below, Kartman failed to meet his burden of proof

in seeking to avoid the judgment allegedly procured by fraud.


### *Fraud*


Kartman's primary claim for relief was that the NSTS judgment was fraudulently

obtained since NSTS was aware that the debt was not owed by the nondebtor wife yet she was

named as a defendant and  default judgment was obtained against her.  The burden of proof for

showing fraud is clear and convincing evidence.  *In re Resorts Int'l, Inc.,* 181 F.3d 505 (3d Cir.

---

[1]    Other than as impacted by the "standing issue", the Court's jurisdiction was not otherwise at issue.

1999); *Lithuanian Commerce Corp., LTD. v. Sara Lee Hosiery*, 214 F. Supp. 2d 453 (D.N.J. 2002);

*In re Barker*, 251 B.R. 250 (Bankr. E.D. Pa. 2000). A judgment will not ordinarily be disturbed on

grounds of fraud except for what is known as "extrinsic" fraud which has been brought to the courts'

attention promptly upon its discovery. *In re Dufrayne*, 194 B.R. 354 (Bankr. E.D. Pa. 1996).

Extrinsic fraud refers to an act or conduct of the prevailing party that prevented the matter from

being fairly presented to the trier of fact. *Id*. at 368. Fraud upon the court is that which seriously

affects the integrity of the normal process of adjudication. *Moore's Federal Practice*, ¶60.21[4][a]

(3d ed. 1999). Examples of such fraud include fraud perpetrated by an officer of the court or

tampering with a jury. *Bankruptcy Evid. Manual*, § 2.3.

There has been no showing by Kartman that he or any of the defendants in the action

brought by NSTS were unfairly prevented from presenting defenses or petitioning to strike or open

the default judgment. To the contrary, Kartman and the other defendants had the opportunity to

timely answer the original complaint and assert a defense regarding the alleged liability of Mrs.

Kartman. It was believed that an extension was given, so no answer was filed prior to the entry of

the default judgment. The defendants petitioned to have the judgment opened. They were provided

an opportunity to be heard when the court scheduled the matter for hearing. Neither the defendants

nor the lawyer who appeared of record on their behalf attended the scheduled hearing. After

Kartman filed his first bankruptcy petition, he did not bring any type of action, either in the

bankruptcy court or the state court, to challenge the default judgment. These actions, or inactions,

were not the result of NSTS or any other party preventing Kartman or the other defendants from

having the matter heard or fairly decided. Kartman and the other defendants had the opportunity

to make whatever argument they deemed meritorious at more than one stage of the state court proceeding and/or the prior bankruptcy proceeding.

The testimony of Mr. and Mrs. Blum showed that the principals of NSTS believed there was personal liability on the part of Mr. and Mrs. Kartman for the obligation. The Court finds that the Blums' belief in this regard was in good faith in light of Kartman's conduct. The record supports a finding that Kartman led the principals of NSTS to believe that both he and Mrs. Kartman would be liable for the debt. Kartman's earnestness in attempting to remedy the situation is commendable. However, it is also understandable that such conduct would lead the Blums to rely upon and maintain a belief that Mr. and Mrs. Kartman were willing to assume responsibility for the debt. Such belief, or the Blums' actions taken in reliance upon that belief, was not the equivalent of fraud. The Court does not find that the current record supports any finding of fraud in obtaining the NSTS state court judgment.

As to the alleged extension of time that Kartman and the other defendants were allegedly granted, Rule 237.2 of the Pennsylvania Rules of Civil Procedure is controlling. Pa. R.C.P. 237.2. Rule 237.2 makes clear that any extension of time must be in writing.[2] That rule is designed to control situations such as the present one. There was no written agreement in this case extending the time for Kartman and the other defendants to file their answer. An extension of time cannot be enforced absent compliance with the rule. In addition, although the complaint filed in the

---

[2]        *Pa. R.C.P. 237.2* provides:

After the notice of intention to enter judgment required by Rule 237.1 has been given, the parties may agree in writing to extend the time within which to file a complaint, an answer or preliminary objections. The agreement shall be in the form prescribed by Rule 237.6 and shall be signed on behalf of both parties. If the required action is not taken within the time specified in the agreement, judgment of non pros or by default may be entered by the prothonotary without further notice under Rule 237.1.

state trial court was filed *pro se,* contrary to Pennsylvania law, that fact in and of itself does not create fraud.

This specific allegation of fraud arose for the first time during trial. Similar to many of the Debtor's allegations of fraud, no factual predicate was pled in any of his pretrial documents nor identified by his Counsel prior to the start of trial. Knowledge of this alleged instance of fraud apparently arose for the first time during the testimony of Kathleen Blum. The issue has now been formally raised in the Debtor's 8002(b) Motion. Kartman now claims that since the judgment "was procured by an officer of the corporation who is not an attorney, who was engaged in the unauthorized practice of law," the corporate officer's "act" should be deemed a fraud "which cannot be ratified, making the judgment void ab initio" contrary to the Court's prior finding. *Motion to Alter or Amend Judgment Pursuant to Bankruptcy Rules 8002(b) and 7052*, ¶3, Document No. 52. Kartman offers no legal authority to support his claim. While our research has yielded meager authority on the effect of an "act" performed by an individual in violation of statutory laws prohibiting the unauthorized practice of law, it appears that even though the specific "act" may be a crime and sanctionable, the actual fruit or product of that act remains valid and enforceable as a matter of law. *See In re Umble's Estate*, 177 A. 340 (Pa. Super. 1935) (a will is not invalid because it was drawn by a person unlicensed to practice law) *aff'd on other grounds*, 323 Pa. 170 (1936) (a deed of trust is not void because it was drafted by a trust officer in violation of the unauthorized practice of law statute); *See also In re Peterson*, 230 Minn. 479 (1950); W.R. Frothingham, Annotation, *Validity of will drawn by layman who, in so doing, violated criminal statute forbidding such activities by one other than licensed attorneys*, 18 A.L.R.2d 918 (1951).

11

The preceding matters complained of by Kartman do not rise to the level of extrinsic fraud such that the judgment obtained may be collaterally attacked.  Fraud must be shown by clear and convincing evidence and that burden has not been met in this particular case.  The record is devoid of any showing of fraud by the Defendant.  Kartman has failed in his burden in this regard.

In addition to asserting common law fraud in his Complaint, rather obliquely, Kartman refers to the Pennsylvania Uniform Fraudulent Transfer Act, 12 Pa.C.S. § 5101 et seq., in an attempt to avoid this transfer.[3]   No specific statutory citations in support of the claim were alleged in the Amended Complaint or during testimony.  None of the elements of the Act were alleged in the complaint.  Rather only a general reference was made to it in the pleadings.  It was not pled with specificity.  The Court learned for the first time during Kartman's testimony of the Debtor's specific theory under the Act when NSTS' Counsel raised an objection to the relevancy of testimony concerning Kartman's financial situation.  Debtor's Counsel responded by alluding to Section 5104(a)(2) of the Act which, in order to prove a fraudulent transfer, requires a showing of lack of "reasonably equivalent value" for the transfer coupled with evidence of the Debtor's financial condition.[4]   At that time NSTS stipulated to the elements of Section 5104(a)(2)(ii).[5]

---

[3]         Kartman's attorney did not address this issue during her closing argument focusing solely on Debtor's primary theory for relief, i.e., the fraud issues previously discussed.

[4]         **§ 5104.  Transfers fraudulent as to present and future creditors**

(a)        **General Rule**. - A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:

(1)        with actual intent to hinder, delay or defraud any creditor of the debtor; or

(2)        without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:

(i)        was engaged in or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or

(ii)        intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.

Despite the benefit of this stipulation, insufficient proof was presented regarding Kartman's lack of

receipt of "reasonably equivalent value" in exchange for the transfer.  12 Pa.C.S. § 5104(a)(2).

The transfer under review not only involves the December 9, 2002 judgment lien

entered in the state court against Kartman as an individual, but also the underlying consideration

given for the transfer.  The evidence addressing the issue of "reasonably equivalent value" came

from both Kartman and Stephen Blum.  Kartman testified that he and West Chester were essentially

one and the same.  Kartman admitted that he spent a substantial portion of his career as a real estate

developer.  It was clear from Kartman and Blum's testimony that maintaining that reputation by

resolving debts incurred in his development activities, whether by West Chester or he personally,

was of considerable importance to him.

At the time of the original meeting between Kartman and Mr. Blum, when the Debtor

was "up to his knees in mud" at the site of the "cleared acreage", Kartman agreed to remain

personally responsible for the NSTS debt.  Although at some time following that meeting he was

required to end his construction business due to the effects of ill health, at the time of the initial

conversation, Kartman had made no decision to retire from or end his real estate development

business.  Rather, at that time the evidence supports a finding that he intended to continue doing

business and agreed to be personally responsible for the NSTS obligation.[6]  The consideration and

purpose for his personal assumption of the NSTS obligation was to protect his business reputation

---

[5]        *See Audio Transcript of Proceeding* dated June 5, 2006, 10:33:00 to 10:33:40.

[6]        At no time during trial was an objection raised as to the admission of this line of testimony involving "a promise to answer for a debt of another" in possible violation of the relevant provisions of the Pennsylvania Statute of Frauds. 33 Pa.C.S. § 3.

and to allow him, in the short term, to maintain his good reputation so as to encourage a lender to provide funding for the current project, and in the long term, to continue in the real estate development business.  All of the testimony presented actually supports a finding that at the time of making the agreement to repay and the subsequent reaffirmations of this intent, the protection of his business position was tantamount and, at least in Kartman's mind, equivalent in value to the West Chester debt to NSTS.  The subsequent discussions between Kartman and Blum as testified to by Blum, did not change this impression but further supported the underlying value of the consideration for the transfer in question at the time in question.  No other testimony or evidence was offered on this issue.

In prosecuting an action pursuant to the Pennsylvania Uniform Fraudulent Transfer Act the plaintiff bears the burden of proof in demonstrating the "lack of reasonably equivalent value" for the transfer as well as one of the enumerated financial conditions set forth in Sections 5104(a)(2)(i) and (ii).  *In re Computer Personalities Systems, Inc.*, 2002 WL 31988134, at *5 (Bankr. E.D. Pa. Dec. 23, 2002).  The plaintiff's burden in regard to proof of all elements in such a proceeding is by a preponderance of the evidence.  *In re C.F. Foods, L.P.*, 280 B.R. 103 (Bankr. E.D. Pa. 2002); *In re Fidelity Bond and Mortgage Company*, 340 B.R. 266, 283 n.22 (Bankr. E.D. Pa. 2006); *see also Peltz v. Hatten*, 279 B.R. 710 (D. Del. 2002) (interpreting 11 U.S.C. §548(a)(1)(B), an analogous provision of the Bankruptcy Code to the Pennsylvania Uniform Fraudulent Transfer Act, finding that a plaintiff must prove by a preponderance of the evidence all elements of that section, including that "reasonably equivalent value" was not provided to the debtor in exchange for the transfer at issue).  Here, the evidence is more consistent with a finding that Kartman actually received reasonable, equivalent value in support of the transfer.  Even assuming

14

he possessed the requisite standing to bring the action, because Kartman did not sufficiently prove the various elements of the Pennsylvania Uniform Fraudulent Transfer Act by a preponderance of the evidence, the Debtor failed to meet his burden of proof in prosecuting his claim under the Act.[7] Regardless, Kartman's action is also barred by the doctrine of claim preclusion.

### Claim Preclusion

When a court of competent jurisdiction renders a valid judgment, the doctrine of claim preclusion, formerly referred to as res judicata, prevents a party from asserting a claim or defense in the subsequent proceeding which could have been brought in the first action. *In re Garafano*, 99 B.R. 624, 629 (Bankr. E.D.Pa. 1989) *citing Montana v. United States*, 440 U.S. 147, 153, 99 S.Ct. 970, 973, 59 L.Ed.2d 210 (1979), *Gregory v. Chehi*, 843 F.2d 111, 115-116 (3d Cir.1988). The purpose of the doctrine of claim preclusion is to "minimize the judicial energy devoted to individual cases, establish certainty and respect for court judgments, and protect the party relying on the prior adjudication from vexatious litigation." *Scott v. Mershon*, 657 A.2d 1304, 1306 (Pa. Super. 1995). In determining the preclusive effect of a state court judgment, the Court is to look to the law of the state rendering the judgment, in this instance Pennsylvania. *Marrese v. Am. Academy of Orthopaedic Surgeons*, 470 U.S. 373 (1985); *McNasby v. Crown Cork and Seal Co.*, 888 F.2d 270, 271 (3d Cir. 1989), *cert. denied*, 494 U.S. 1066 (1990). In Pennsylvania, claim preclusion requires the showing of four elements: (1) identity of the thing sued on; (2) identity of

---

[7]     The Act provides a four year statute of limitation for one to bring an action following the date of transfer. 12 Pa.C.S. § 5109(1). As noted, Kartman did not specifically address the elements of the Act in his Amended Complaint despite being given the opportunity to do so by the Court following grant of the Defendant's original Motion to Dismiss. No statute of limitations defense was raised in the pleadings as to any of the Debtor's claims.

the cause of action; (3) identity of person; (4) identity of quality or capacity of parties suing or sued.
*Scott v. Mershon*, 657 A.2d 1304 (Pa. Super. 1995).

In the instant case, the elements of claim preclusion are met. There is identity of the thing being sued on, i.e. the debt owed to NSTS and the resulting judgment. Second, identity of cause of action exists. While the present adversary is couched as an action to "avoid lien impairing an exemption" pursuant to Section 522(h), Kartman's allegations and the testimony presented at trial pertained almost exclusively to the alleged fraud perpetrated by NSTS. The identity of the persons is also the same in this action as in the state court action, Kartman and NSTS.  The quality or capacity of the parties is not an issue here.

Kartman had a full and fair opportunity in state court to raise the matters of which he is now complaining. Even if the allegations of fraud were found to be true, which this Court does not so find, Kartman had knowledge of the underlying facts and resulting allegations at the time he filed the petition to open the NSTS judgment in state court.  While he filed a petition to open the default judgment, he failed to appear or otherwise prosecute the petition. Upon entry of the final order allowing the default judgment to stand, Kartman failed to appeal or seek other reconsideration. Instead, he chose to rely on the filing of his first bankruptcy. However, upon the filing and throughout that  bankruptcy, he failed to file any type of pleading to raise a dispute regarding the judgment despite knowledge of the alleged fraud throughout the pendency of the case.  Under these factual circumstances, the application of claim preclusion is appropriate despite the allegations of fraud which this Court has found not to be proven. *See In re McKenzie*, 135 B.R. 689 (Bankr. S.D. Fl. 1991). The preclusive effect of a judgment may not be avoided by a party "... simply because the

losing party neglected to take best advantage of his day in court or that additional evidence or argument would produce a different outcome." *See In re Garafano,* 99 B.R. 624 (Bankr. E.D. Pa. 1989.)

In *Garafano, supra,* the debtor attempted to collaterally attack a prepetition district court judgment in his bankruptcy proceeding.  The court recognized that a prepetition judgment could be collaterally attacked where the court rendering the judgment lacked subject matter jurisdiction or where the judgment was rendered void as a result fraud or collusion. *Id*.  The debtor argued, in part, that where the judgment was the result of an obligation that was not legally enforceable, it was subject to collateral attack. Similar to this case, the debtor in *Garafano* contended that the debt was a corporate one and not a personal obligation.  The court distinguished other cases which permitted review of the underlying judgment on the basis that the parties in those cases were prevented from asserting their defenses.  However, Garafano like Kartman, experienced no such prevention. *Pepper v. Litton* 308 U.S. 295, 60 S.Ct. 238 (1939); *Margolis v. Nazareth Fair Grounds & Farmers Market*, 249 F.2d 221 (2d Cir. 1957)  There was nothing about the proceeding or the relationship of the parties that prevented Garfano from asserting his defense.  Nor did the court read the *Pepper* and *Margolis* cases to allow for a collateral attack on the basis that the underlying judgment lacked merit. *Id*. at 632.

What Garafano was attempting to do in his bankruptcy was assert the defense he previously failed to bring.  "What the Debtors assert here is not fraud, but is, in fact, a substantive defense, i.e. that [the debtor] is not personally liable on the debt. If [the debtor] believed that he had no personal responsibility for the Company's withdrawal liability, he was free to defend the action

17

in the district court on that basis." *Id*. Like the debtor in *Garafano*, if Kartman believed that the debt was a corporate liability and not a personal one, he was free to raise that argument in the state trial court action. There is nothing in the record to even suggest that he was prevented from doing so. This Court adopts the reasoning and holdings of the *Garafano* court regarding the NSTS judgment. Accordingly, the Court finds that Kartman is precluded at this time from claiming that the NSTS judgment was a corporate obligation and not a personal one.

## *CONCLUSION*

For the reasons expressed above, this Court finds that the Debtor, John A. Kartman, does not have standing to assert his action pursuant to 11 U.S.C. § 522(h). The Debtor failed to meet the statutory requirements of Section 522(h) since Kartman did not show that the judgment he sought to avoid impaired an exemption to which he was entitled under Section 522(b).

Although Kartman's lack of standing is determinative of the outcome in this case, other bases exist which would require the Court to deny the relief requested in the complaint. The doctrine of claim preclusion is applicable and bars Kartman from bringing what amounts to a substantive defense that he could have raised in the underlying state court action. There was no showing by Kartman that the judgment was procured by fraud or that he was in any way prevented from asserting his defense. Kartman failed in his burden of proof to show any fraud by NSTS either in the procurement of the judgment itself or by way of the Pennsylvania Uniform Fraudulent Transfer Act.

As previously stated and so as to avoid any potential confusion regarding the Court's prior Order, the Debtor's *Motion to Alter or Amend Judgment Pursuant to Bankruptcy Rules 8002(b) and 7052* is granted.   This Memorandum Opinion sets forth the Court's findings of fact and conclusions of law pursuant to F.R.Bankr.P. 7052(b) and the Order previously entered at Document No. 50 dated  June 5, 2006 is accordingly "altered and amended" pursuant to the Debtor's request. Furthermore, for the reasons stated, the relief requested in the *Amended Complaint to Avoid Lien Pursuant to 11 U.S.C. § 522(h) and § 544* filed by Plaintiff/Debtor John A. Kartman is denied with prejudice.

An appropriate order will be entered.[8]

Dated: September 29, 2006

Thomas P. Agresti
U.S. Bankruptcy Judge

case administrator to serve:
     Ronda J. Winnecour, Ch. 13 Trustee

     Mary Bower Sheats, Esq.
     1310 Allegheny Building
     429 Forbes Avenue
     Pittsburgh, PA 15219

     Robert J. Williams, Esq.
     Schnader Harrison Segal & Lewis LLP
     Suite 2700, Fifth Avenue Place
     Pittsburgh, PA 15222

---

[8]     This Memorandum Opinion constitutes the Court's findings of fact and conclusions of law.  In setting forth its reasoning and reaching the conclusions found herein, the Court has considered all of the evidence, exhibits, and arguments of counsel, regardless of whether they are specifically referred to in this Opinion.

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

IN RE:

|  |  |  |
|---|---|---|
| JOHN A.  KARTMAN, | ) | Bankruptcy No. 04-27371 TPA |
| Debtor | ) | Chapter 13 |
|  | ) |  |
| JOHN A.  KARTMAN, | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| v. | ) | Adversary No.  05-2149 TPA |
|  | ) |  |
| NORTH SUBURBAN TREE , | ) |  |
| SERVICE INC., | ) |  |
| Defendant, | ) |  |

**ORDER OF COURT**

**AND NOW**, this **29th** day of *September, 2006*, for the reasons expressed in the Memorandum Opinion of even date and accompanying this Order, it is hereby **ORDERED, ADJUDGED and DECREED** that:

(1)     The Debtor/Plaintiff, John A. Kartman's *Motion to Alter or Amend Judgment Pursuant to Bankruptcy Rules 8002(b) and 7052* filed at Document No. 52 is *GRANTED*.

(2)     Judgment is hereby entered pursuant to *Fed. R. Bankr. P. 7052(b)* thereby amending the Court's prior Judgment Order dated June 5, 2006 entered pursuant to *Fed. R. Bankr. P. 7052(a)* at Document No. 50.

1

(3)    The relief requested in the Debtor/Plaintiff, John A. Kartman's *Amended Complaint to Avoid Lien Pursuant to 11 U.S.C. § 522(h) and § 544* filed at Document No. 21 is **DENIED** with prejudice.


Thomas P. Agresti
U.S. Bankruptcy Judge

Case Administrator to serve:
    Ronda J. Winnecour, Ch. 13 Trustee

    Robert J. Williams, Esq.
    Schnader Harrison Segal & Lewis LLP
    Suite 2700, Fifth Avenue Place
    Pittsburgh, PA 15222

    Mary Bower Sheats, Esq.
    1310 Allegheny Building
    429 Forbes Avenue
    Pittsburgh, PA 15219